# FULLY FOUND CHARTER

This Fully Found Charter Party is made and entered into this 30th day of August, 2024, by and between [Big Hog Energy LLC.] (hereinafter the "Charterer") and Marquette Transportation Company Gulf-Inland, LLC (hereinafter the "Owner") owner or chartered owner of the towing vessel specified in Section 1 herein (hereinafter the "Vessel").

Owner agrees to charter to Charterer on a fully found basis and Charterer agrees to charter from Owner on such basis the Vessel on the following terms and conditions:

1. VESSEL: M/V Risen Saviour

2. DELIVERY PORT: New Orleans, LA

3. REDELIVERY PORT: New Orleans, Louisiana.

4. DELIVERY DATE: On or around Sept 1st, 2024

5. TERM: This Charter shall be effective from the date of delivery and shall continue up to and including August 31st, 2025 (the "Initial Term"). Following the Initial Term, this Charter may be renewed or modified by mutual agreement of the parties.

CHARTER HIRE RATE: [redacted]

The quantity of fuel onboard the Vessels shall be determined by the Parties at the time each respective Vessel goes on-charter and again at the time each respective Vessel goes off-charter. In the event there is more fuel on the Vessel at the time said Vessel goes off-charter as compared to the time when the Vessel went on-charter, Owner shall reimburse Charterer for the difference between the on-charter and off-charter fuel at the price per gallon posted at the nearest Vessel fueling facility to the Redelivery Port as posted at the time said Vessel goes off-charter. In the event there is less fuel on a given Vessel at the time said Vessel goes off-charter as compared to the time when the Vessel went on-charter, Charterer shall reimburse Owner for the difference between the on-charter and off-charter fuel at the price per gallon posted at the nearest Vessel fueling facility to the Redelivery Port as posted at the time said Vessel goes off-charter.

6. CHARTER HIRE PAYMENTS: Charterer shall pay Charter Hire to Owner on a monthly basis. Owner will bill Charterer at the beginning of each month, and Charterer will pay all invoices to Owner within thirty (30) days of invoice date. Unless otherwise agreed, all payments shall be made in immediately available funds. If Charterer should fail to make any payment in a timely fashion, then interest shall accrue at a rate of 1 ½% per month for any payments not timely made.

7. SUBSTITUTION OF VESSEL: Owner may substitute vessels of substantially similar size, horsepower and fuel efficiency to replace a Vessel after providing at least five (5) days advance written notice to Charterer.

8. TOTAL OR CONSTRUCTIVE LOSS. If the Vessel, during the Charter Period, becomes a total or constructive total loss, as those terms are generally understood in the towing and marine insurance trades, this Charter shall terminate with respect to the Vessel as of the date of the event causing such total or constructive total loss, unless Owner shall elect to provide Charterer, and if Charterer agrees to accept, a

substitute towboat of substantially similar size and horsepower within ten (10) business days of the event causing such loss.

9. BARGE AND TUG CHARGES: Charterer shall pay all mooring, fleeting, switching, clearing, tug assistance, wharfage tolls, taxes, user taxes and other governmental charges or similar charges necessary for the towing of barges pursuant to this Charter, including all tug charges for the safe movement of the Vessel and its tow, adding or dropping barges from the tow, or assisting the Vessel and its tow at locks or bridges.

10. SPECIAL PROVISIONS:

a. Owner shall have the right but not the obligation to restrict or limit the size of the tow of the Vessel or refuse towage of Vessels or barges that Owner determines unfit to be towed. Additionally, Owner may choose to restrict the operation of the Vessel as it deems necessary for safe and adequate navigation under existing river and weather conditions and/or in order to comply with government regulations.

b. Charterer and Charterer's customers shall furnish barges for towing that are, in all respects, seaworthy and fit for the cargo and voyage contemplated. Owner shall not be liable for any damages or losses arising out of or proximately caused by the unseaworthiness of any barge, the negligence of Charterer, the negligence of third parties and/or acts of God. Any cost, expense, loss or damage occasioned as a result of improper loading or unloading shall be for the account of Charterer and at Charterer's sole risk.

c. Neither Charterer nor any of Charterer's customers that own, manage or operate barges booked for towage by Owner shall be entitled to recover damages against Owner for repair costs to any barge unless the damages are in excess of $15,000 per barge and were caused by the negligence of Owner, and Charterer shall indemnify, defend and hold harmless Owner from any claims for damages which are less than that amount.

d. Neither party will be liable to the other party for, nor will a party pay on behalf of the other party, any punitive, incidental, special, or consequential damages or losses (including without limitation loss of production or losses from business interruption), and each party releases the other party in that regard.

11. WARRANTIES: Charterer is now and shall remain during the life of this Charter a citizen of the United States as defined in Section 2 of the Shipping Act, 1916 as amended, for the purpose of ownership and operation of vessels in the coastwise trade for which the Vessel is licensed.

12. NAVIGATIONAL LIMITS/SCOPE: The scope of this agreement shall be the transportation of two 30,000-barrel tank barges on the Intracoastal Waterway to include Brownsville, TX.

13. DOWNTIME: Owner shall be allocated twenty-four (24) hours of "downtime" per month. Unused downtime hours shall accumulate on a month to month basis up to a cap of one hundred and ninety-six (196) hours per Vessel ("Accumulated Downtime"). Charter Hire will be deducted in excess of Accumulated Downtime at the rate of 1/24 of the daily charter hire rate for each hour of downtime. For the purpose of this section, "downtime" shall mean only the time that a Vessel incapable of operating because of insufficient crew, because of the need to effectuate repairs, because of a marine accident that is proximately caused by fault on the part of the Vessel and its crew, or because the Vessel is otherwise incapable of operating as contemplated by this Agreement. The Vessel must be incapable of operating for six (6) consecutive hours before "downtime hours" shall begin to accumulate.

14. OWNER'S INSURANCE: Owner shall, at its own expense, procure and maintain during the term of this Agreement the following insurance coverage for all vessels it arranges to perform the services contemplated by the Agreement: (a) Protection and Indemnity insurance subject to not less than the terms and conditions of the P&I SP-23 (revised 1/56) form of policy or its equivalent including Collision and Tower's Liability, Jones Act, Cargo Legal Liability, Tankerman's Liability, Contractual Liability and Pollution Buy-Back Endorsement, (b) Pollution Liability insurance subject to not less than $5,000,000 for OPA and Cercla coverage available through the Water Quality Insurance Syndicate or its equivalent. The coverage specified in items (a) and (b) above shall provide a limit of liability of not less than $10,000,000 per occurrence. The specified limit of liability may be in any combination of primary and excess insurance. Owner shall receive the benefit of any cargo damage waivers Charterer may have with its customers.

15. CHARTERER'S INSURANCE: Charterer shall, at its own expense, procure and maintain during the term of this Agreement (a) Charterer's liability insurance coverage and (b) Comprehensive General Liability insurance including Contractual Liability and Cross Liability provisions, with the coverage specified in items (a) and (b) above shall provide a limit of liability of not less than $10,000,000 per occurrence, or in the aggregate as respects the Comprehensive General Liability policy. The specified limit of liability may be in any combination of primary and excess insurance.

16. ASSIGNMENT: Charterer may not sell, transfer, or assign this Charter or any interest therein, or sub-charter on a fully found basis the Vessel, without the prior written consent of Owner.

17. ENTIRETY: This Charter constitutes the entire agreement of the parties and supersedes all prior representations and understandings between Charterer and Owner regarding its subject matter. No amendment of this Charter shall be effective or binding unless in writing and executed by both Charterer's and Owner's respective duly authorized representatives.

18. EVENTS OF DEFAULT AND REMEDIES: In the event a party to this agreement shall fail to perform any of its duties or obligations hereunder, or shall violate any of the covenants imposed upon it under this Charter Party, or in the event a petition in bankruptcy shall be filed by or against one of the parties, a receiver or trustee, custodian or assignee shall be appointed for any party or the property of a party, or a party shall make an assignment or transfer for the benefit of his creditors or be adjudged insolvent, or any payments required under this Charter are not made, and after written notice from the non-defaulting party to the party in default, describing the event of default with particularity, the party in default shall have fifteen (15) days following receipt of written notice to cure the default. If the default is not cured within this time period, then the non-defaulting party, at its option, may (a) proceed by appropriate court action(s) either at law, in equity or admiralty to enforce performance of the applicable covenants or terms of this Charter Party; and/or (b) terminate the Charter Party without prejudice to any of its rights hereunder.

19. APPLICABLE LAW AND FORUM: The Admiralty and Maritime Law of the United States will govern the construction, interpretation, and performance of this Charter. The exclusive forum for any litigation arising out of this Charter is the U.S. District Court for the Western District of Kentucky. The parties waive trial by jury.

20. NOTICES: Any notice required or permitted under the terms of this Agreement shall be considered properly served if in writing and delivered personally or sent by certified mail, return receipt requested, postage prepaid, overnight express delivery service or electronic mail to the Parties at the following respective addresses or such other address as may be specified in writing:

<u>If to Owner:</u>
Marquette Transportation Company Gulf-Inland, LLC

107 Mallard Street
St. Rose, LA 70087
Attn: Kendall Chauvin
Email: kchauvin@marquettetrans.com; mtclegal@marquettetrans.com

If to Charterer:
Big Hog Energy LLC.
12200 west Interstate 20
Odessa Texas 79763
Attn: Max Jenson
Email: max@maximcrude.com

21. GENERAL PROVISIONS:

a. This Charter Party may be executed in counterparts, which when taken together, shall constitute the same document. This document may be executed and signatures may be delivered via facsimile or email (PDF).

b. This Charter is not to be deemed a personal contract of Owner or in any way to impair Owner's right to limit its liability.

c. Both parties have participated in the negotiation of this Charter and no significance shall be given to the fact that either party may have prepared the Charter.

d. Any party signing this Charter on behalf of a corporate entity does hereby warrant that he has full authority to bind said entity to all of the terms and conditions of the Charter contained herein.

e. The failure of either party hereto to insist, in any one or more instances, upon strict performance of any one of the provisions of this Charter, or to enforce any of its rights hereunder, shall not be considered a waiver of any such provisions or rights, but the same shall continue and remain in full force and effect.

f. If any provision of this Charter or the application thereof to any person or circumstances shall, to any extent, be held to be invalid or unenforceable by a court of competent jurisdiction, the remainder of this Charter or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable shall not be affected thereby, and each provision of this Charter shall be valid and enforceable to the fullest extent permitted by law.

g. In the event either party defaults hereunder, and the other party must seek judicial enforcement of this Charter, the defaulting party shall be liable to the non-defaulting party for expenses actually incurred and paid which include but may not be limited to reasonable attorney's fees, court costs and other expenses of collection of any sums due hereunder.

*[Signature page follows]*

Signed effective the date written above.

**CHARTERER:**
BIG HOG ENERGY LLC

By:______________________________

Name:______________________________

Title:______________________________

Max Jensen
Managing men

**OWNER:**
MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, LLC

By:______________________________

Name: Kendall Chauvin

Title: EVP - Gulf Inland